# SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

Jeffrey J. Greenbaum
Member of the Firm
Direct Dial:  (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

600 College Road East
Princeton, NJ 08540
Tel: 609-227-4600
Fax: 609-227-4646

April 27, 2017

**VIA ECF**

Honorable Douglas E. Arpert, U.S.M.J.
United States District Court
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ  08608

Re:     *Evans v. National Auto Division, L.L.C., et al.*
          **Civil Action No. 15-8714 (AET)(DEA)**

Dear Magistrate Judge Arpert:

We represent Defendants National Auto Division, L.L.C. ("NAD") and Ariel Freud in the above matter, and write in response to Plaintiff's April 24, 2017 letter concerning two discovery disputes between the parties.  Despite Plaintiff's ad hominem attacks that are improper, untrue, irrelevant, and serve no purpose other than to distract from the legal issue at hand, Defendants have attempted in good faith to resolve the two issues raised by Plaintiff.

A.      **Training Manual Is Protected Confidential Business Information, And The Redacted Portions Do Not Relate To The Issues In The Case**

While Counsel for Plaintiff personally attacks Defendant's counsel's experience and his citation to relevance as not forming a basis for any objection, counsel should instead refer to the Federal Rules.  To be discoverable, a document must be non-privileged, relevant to a party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).  Plaintiff has made no threshold showing of relevancy, and certainly none that would overcome NAD's interest in protecting trade secrets and its confidential business information on how it trains its employees to make telephone sales and overcome possible consumer resistance.  To facilitate the resolution of this issue, NAD produced a redacted version that reveals the only pages that may

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Honorable Douglas E. Arpert, U.S.M.J.
April 27, 2017
Page 2

arguably have any relevance to issues regarding NAD's internal do-not-call policy.[1] The remainder of the document has nothing to with that issue.

NAD has been in the business of providing its customers Extended Vehicle Service Agreement plans with high levels of comprehensive coverage at low prices since 1983. As part of its business, NAD trains its employees on its extended vehicle service plans, including but not limited to, the scope of the coverage being offered, the costs of the plans depending on the class of the particular vehicle, as well as the standard warranty offered by various manufacturers. NAD also trains its employees on its policies and procedures on such things as employee attire, cell phone use, parking, attendance, payroll, breaks, office conduct, etc. Further, NAD trains its employees on the art of the sale and provides guidance and direction on how NAD wishes to sell its extended vehicle service plans. These are the types of topics covered in NAD's training manual. However, none of these topics have anything to do with whether Plaintiff, who voluntarily provided his contact information on a website requesting more information about an extended vehicle service plan, received calls on his cell phone in violation of the TCPA. In fact, Plaintiff asserts a single cause of action under the TCPA, and does not assert any claims relating to NAD's Extended Vehicle Service Agreement plans. *See* Fed. R. Civ. P. 26(b)(1) ("[P]arties may obtain discovery of any non-privileged matter that is relevant to the party's claim or defense . . . .").

To the extent the manual arguably relates to how NAD's do-not-call policy is implemented, it has been produced. Plaintiff is entitled to no more. Defendants have separately produced NAD's do-not-call policy, acknowledged by its sales employees, which is separate from the manual. An additional copy of the document as acknowledged by former employee Nicoletti is attached.[2] Defendants have produced those portions of NAD's training manual related to NAD's U.S. Coverage Script and a script for how to handle requests by a customer to speak to a supervisor (or to be put on the Do Not Call list), which arguably may have relevance. While it is arguable whether these are even discoverable, the coverage script and the supervisor script provide the dialog in which NAD representatives are trained to read from when interacting with a potential customer interested in an extended vehicle service plan and what to do if a customer requests to speak with a supervisor. All other sections of NAD's training manual have nothing to do with Plaintiff's claim and were properly redacted prior to production. The rest of the training manual is confidential, and contains NAD's trade secrets related to NAD's products, policies and procedures for its employees that are irrelevant to this case. Defendants, therefore, should not be required to produce an unredacted version. *See Spano v. Boeing Co.*, 2008 U.S.

---

[1]  We note that Plaintiff submitted the redacted pages to the Court but did not share the substance of the pages actually produced.

[2]  It also should be noted that Plaintiff is obtaining the cooperation of this former employee who is presently working for a competitor. Trade secret information should not be produced, even under a protective order, when it has no relevance to the case.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Honorable Douglas E. Arpert, U.S.M.J.
April 27, 2017
Page 3

Dist. LEXIS 31306, 2008 WL 1774460, at *2 (S.D. Ill. Apr. 16, 2008) (holding that "redaction of information . . . was acceptable because that information [was] not relevant to the issues in this case"); *Schiller v. City of New York*, 2006 U.S. Dist. LEXIS 88854, 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006) (same).

## B.     NAD's Dialing System

Likewise, Plaintiff's contention that Defendants should be compelled to further respond to Requests for Admission Nos. 5-7, is full of more baseless ad hominem attacks and should be denied.  Defendants have made the brand name of the dialing system available and will produce a witness for the Rule 30(b)(6) notice that fully understands how it works.  They are not required to sift through various regulations and long definitions and provide legal opinions on the extent to which its system conforms to various technical definitions chosen by Mr. Glapion from different regulations.  Our co-counsel, Mr. Raney, who is fully familiar with these extensive definitions, could not in good faith admit or deny the Requests as proposed by Mr. Glapion.

While Plaintiff may not like Defendants' responses to Requests for Admission Nos. 5-7, counsel have attempted to discuss in good faith the fact that Plaintiff's definitions for "Automatic Telephone Dialing System" differs from the definition set forth in the TCPA, and that his definitions of "Dialer" and "Dialed Call" are too broad making it impossible to either admit or deny Plaintiff's Requests.  Indeed, Defendants have taken the position that its dialing equipment complies fully with the TCPA, 47 U.S.C. 227, and have said so in response to Plaintiff's motion to consolidate.  However, Defendants have consistently disputed and objected to Plaintiff's attempt to expand the TCPA's definition of "Automatic Telephone Dialing System", as well as its overbroad definitions of "Dialer" and "Dialed Call", in an attempt to force Defendants to admit something that it cannot do.  Plaintiff's Requests for Admission set forth the following overly broad definitions for "AUTOMATIC TELEPHONE DIALING SYSTEM", "DIALER", and "DIALED CALL" as follows:

"AUTOMATIC TELEPHONE DIALING SYSTEM" means:
>     i.     Equipment that has the capacity (i) to store or produce telephone numbers to be called, using a random or sequential number generator, and (ii) to dial such numbers; or

>     ii.     Technology with the capacity to dial random or sequential numbers; or

>     iii.     Hardware, software, or equipment that the FCC characterizes as an automatic telephone dialing system through the following, and any related, declaratory ruling and order: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72 (adopted June 18, 2015 and released July 10, 2015).

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Honorable Douglas E. Arpert, U.S.M.J.
April 27, 2017
Page 4

"DIALED CALL" means any attempt to connect with a person via placing a telephone call or text message using a DIALER.

"DIALER" means any electronic or manual system that is capable of making a telephone call or sending a text message. "DIALER" includes any and all components of that system that are necessary in order to make a telephone call, without limitation.

Although the TCPA only defines an "automatic telephone dialing system" as "equipment which has the capacity (1) to store or produce telephone numbers to be called, using a random or sequential number generator; and (2) to dial such numbers," Plaintiff's Requests dramatically expand that definition and require Defendants to, among other things, analyze a 138 page single spaced document issued by the FCC (*see* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1_Rcd.pdf), as well as to research and confirm that there are no other "related" declaratory rulings and Orders and provide a legal conclusion as whether NAD's dialing system, not only is an "Automatic Telephone Dialing System" as defined by the TCPA, but also whether it satisfies Plaintiff's definition of "AUTOMATIC TELEPHONE DIALING SYSTEM." Plaintiff's Requests improperly require Defendants to provide a legal opinion of whether NAD's equipment satisfies Plaintiff's expansive definition.

Furthermore, Defendants objected to Plaintiff's definition of the term "DIALER," whether used directly or as a component part of Plaintiff's definition of the term "DIALED CALL" or any other term, because it is not defined with sufficient specificity for Defendants to coherently respond to any Requests that include that term. In addition, Plaintiff fails to define the term "DIALER" with reference to any statute or regulation and uses the term "components" within his definition of "DIALER" without any limitation in scope. Plaintiff's use of the term "components" literally could be read to include power sources, transmission cables, computers, telephone systems or other property, which Defendants could not possibly be expected to know the capabilities of, rendering Plaintiff's definitions of "DIALER" or "DIALED CALL" incomprehensible. Accordingly, Defendants' responses – that they can neither admit nor deny Plaintiff's requests – are proper and Plaintiff's request to compel more should be denied.

We appreciate Your Honor's continued consideration of this matter.

Respectfully submitted,

*s/Jeffrey J. Greenbaum*

JEFFREY J. GREENBAUM

JJG:cf
Enclosure
cc:     Jeremy M. Glapion, Esq. *(by e-mail and ECF)*
        William E. Raney, Esq. *(by e-mail and ECF)*

National Auto Division, L.L.C.
Do Not Call Policies and Procedures Disclosure
Revised - 12/30/08

National Auto Division, L.L.C. is in compliance with all Federal
and State laws and regulations regarding Do Not Call (DNC)
requests and maintenance of DNC files.

We subscribe to a service that maintains updated files of all individual state
DNC lists as well as the federal DNC list. Prior to loading any record for
calling at National Auto Division, L.L.C., all phone numbers are passed
through this service. Any matches found are then removed, flagged or
suppressed from the file prior to calling.

In addition, National Auto Division, L.L.C. maintains its own DNC file
as required by the Telemarketing Consumer Protection Act (TCPA) of 1991.
Anyone whom we contact (that falls within the confines of the TCPA) that
requests to be placed on our Do Not Call list is added to that file. Prior to
calling any new list, all phone numbers are passed against this file and all
matches are removed, flagged or suppressed.

In order to maintain ongoing compliance with the TCPA, all Telemarketing
Representatives at National Auto Division, L.L.C. are made aware of
the laws regarding DNC and trained to properly handle DNC requests.

As a Telemarketing Representative of National Auto Division, L.L.C., I
acknowledge receipt and understanding of the above disclosure. I shall
properly honor any request to be placed on our Do Not Call list. Also, if
someone should request a copy of our DNC policy, I will confirm their name
& address and forward this request to a Supervisor.

First Name: MICHAEL          Last Name: NICOLETTI

Signature: _____          Date: 01092014